UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: RUSSELL MOORE AND WANDA MOORE          CASE NO. 11-11850-DWH
                                              CHAPTER 12

REGIONS BANK                                                    PLAINTIFF

VERSUS                                        ADV. PROC. NO. 12-1012-DWH

PENICK PRODUCE CO., INC.; PERFECT
PACK SWEET POTATO PACKING CO., LLC;
RUSSELL MOORE and WANDA MOORE                                  DEFENDANTS

## OPINION

On consideration before the court are motions for summary judgment filed by the plaintiff, Regions Bank ("Regions"), and a motion for summary judgment filed by the defendant, Penick Produce Co., Inc., ("Penick Produce"); responses and memoranda of law having been filed by the respective parties; a telephonic status conference having been conducted by the court; and the court, having considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core adversary proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

II.

In conjunction with their sweet potato farming operations, Russell and Wanda Moore, ("debtors"), borrowed crop production funds from Regions during 2007, 2008, and 2009. In each

year, the debtors executed promissory notes in favor of Regions which were secured by their crops and equipment. For example, in 2009, the collateral description in the Uniform Commercial Code financing statements provided the following:

> 06/01/2009    All crops, and farm products whether any of the foregoing is owned now or acquired later; whether any of the foregoing is now existing or hereafter raised or grown, all accessions, additions, replacements and substitutions relating to any of the foregoing...Sweet Potatoes
>
> 08/31/2009    5,000 potato boxes and all farm equipment, now or hereafter existing or acquired, any and all accessions and additions now or hereafter made or any to any of the items described above, any repair parts, substitutions, and replacements therefor, and all attachments and improvements now or hereafter placed upon or used in connection therewith or with any part thereof; all books and records and general intangibles pertaining to any of the above, and all proceeds and products of any of the above Equipment (List Attached)

Unfortunately, in 2009, there was a complete crop disaster, and the debtors were unable to repay their loan to Regions. In 2010, Regions decided to discontinue the lending arrangement. However, Regions did agree to forebear from foreclosing on the debtors' assets so that they could attempt to farm for that year. To effectuate the forbearance, the maturity date of the debtors' loan was extended on two occasions, from December 19, 2009, to March 19, 2010, and then again to June 19, 2010. Both of the letter agreements, which were executed by Russell Moore, contained the following language:

> This letter is not intended to be, and shall not be deemed or construed to be, a novation with regard to the Loan, and except as expressly modified by this letter, all terms, conditions, and provisions of the Loan (including, without limitation) Borrower's obligation to make monthly payments of interest or principal and interest as the terms of the Loan documents may provide), and all documents and instruments evidencing the Loan, remain and continue in full force and effect. This letter constitutes no obligation on our part to renew or refinance the Loan, or to further extend the maturity date, upon the New Maturity, and we have not waived any, and we reserve all of, our rights and

2

remedies under any and all of the Loan documents with respect to any existing or future default, whether known or unknown to us.

As a result of the forbearance, the debtors were able to utilize their encumbered equipment in order to plant and harvest a crop in 2010. The funds necessary to accomplish this came from the following sources:

- a) A NAP disaster payment in the sum of $100,000.

- b) A contribution from Perfect Pack, Inc., a corporation owned by the debtors, in the sum of $80,000.

- c) The liquidation of the debtors' IRAs in the total sum of $80,000.

- d) The liquidation of the debtors' son's college fund in the sum of $9,000.

- e) A crop loan from Crop Production Services ("CPS"), which was secured by a first lien on the 2010 crop.

After the CPS lien was satisfied, and other related expenses were paid, the debtors retained net proceeds from the 2010 crop in the total sum of $410,347.00.

On April 25, 2011, the debtors filed their voluntary petition for relief pursuant to Chapter 12 of the United States Bankruptcy Code.

In its complaint, Regions alleges that Penick Produce purchased sweet potatoes from Russell Moore which had been processed by Perfect Pack Sweet Potato Packing Co., LLC, ("Perfect Pack"), a company that is wholly owned by Moore. Regions asserts that Penick Produce made no inquiry as to the existence of Regions' lien on these potatoes, and, consequently, failed to remit its payments for the potatoes to Regions as the secured party. Through exhibits submitted to the court, Penick Produce acknowledges that it paid Moore directly for purchases that came from the 2009 and 2010 crops as follows:

3

| 2009 | $ 77,029.50 |
| 2010 | $113,860.00 |

In its defense, Penick Produce contends that because of limiting language set forth in Regions' UCC-1F financing statements that its lien was ineffective as to the 2010 crops or any subsequent crops. Penick Produce further asserts that Regions cannot prove that the potatoes purchased were actually owned or grown by Moore.

### III.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Miss. Bankr. L.R. 7056-1. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987); *Putman v. Ins. Co. of N. Am.*, 673 F.Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.29 265 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987), *Putman v. Ins. Co. of N. Am.*, 673 F. Supp. 171 (N.D. Miss. 1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

The court notes that it has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed for the trier of fact. *Kunin v. Feofanov*, 69 F.3d 59, 61 (5th Cir. 1995); *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994); *Veillon v. Exploration Services, Inc.*, 876 F.2d 1197, 1200 (5th Cir. 1989).

IV.

The court, after having reviewed the parties' respective memoranda, the attached exhibits, and the comments offered at the status conference, is of the opinion that there are numerous issues of material fact that remain in dispute. These include, but are not limited to, the following:

1. As set forth hereinabove, the proof presented at earlier hearings indicted that the debtors retained net proceeds from the 2010 crop in the total sum of $410,347.00, after the first lien to Crop Production Services, ("CPS"), had been satisfied. Because the debtors utilized these monies, without court authorization, to plant their 2011 crop, the court ordered the debtors to repay this money to Regions with interest. Since this repayment has now been completed, it appears that Regions has been paid relative to any security interest that it might have had in the 2010 crop and should not be able to effectuate a duplicate collection from Penick Produce.

2. Also in regard to the 2010 crop, since the apparent first lien position of CPS, encumbering this crop, was paid and satisfied,

evidence will have to be presented to establish whether or not any of the payments made by Penick Produce to Moore were utilized to satisfy any portions of the CPS lien. If the CPS lien was indeed superior to that of Regions, payments that were utilized to satisfy the CPS lien would not have adversely impacted the security interest of Regions.

3. Despite the fact that Penick Produce's payments for the potatoes were made directly to Moore, it contends that Regions cannot prove that the potatoes were owned or grown by Moore. This is clearly an issue that must be resolved by the presentation of evidence rather than through a motion for summary judgment.

4. On more than one occasion in its papers, Regions asserted that Penick Produce purchased potatoes in violation of its security interest which was applicable to the 2010 and 2011 crops. While the records of Penick Produce indicate that purchases were only made from the 2009 and 2010 crops, Regions could not have a "carry over" lien on the 2011 crop because it was planted after the filing of the Moores' bankruptcy case. Such a lien does not extend to post-petition property. *See*, § 552(a) of the Bankruptcy Code.

5. The argument by Penick Produce that the lien perfected by Regions' UCC-1F financing statement cannot extend beyond the crop year specifically set forth on the financing statement is diluted

by the fact that Penick Product purchased potatoes for the sum of $77,029.50 from the 2009 crop, which is expressly identified on the financing statement. This is yet another issue that will necessarily have to be developed through the presentation of evidence.

Because of the foregoing, which is indicative that there are indeed material factual issues remaining in dispute, the motions for summary judgment are not well taken and must be overruled without prejudice. In view of the fact that there are multiple adversary proceedings pending in the debtors' bankruptcy case that involve these same parties, the court directs the attorneys for the parties to confer to determine whether these proceedings might be consolidated and the issues redefined.

An order, consistent with this opinion, will be entered contemporaneously herewith.

This the 22nd day of October, 2012.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE