## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **RUSSELL AND WANDA MOORE,** | ) | **Case No. 11-11850-JDW** |
| | ) | |
| Debtors. | ) | **Chapter 12** |

| | | |
|---|---|---|
| **REGIONS BANK** | ) | |
| | ) | |
| Plaintiff | ) | **A.P. No. 12-01012-JDW** |
| | ) | |
| v. | ) | |
| | ) | |
| **PENICK PRODUCE CO., INC., PERFECT PACK SWEET POTATO PACKING CO., LLC, RUSSELL and WANDA MOORE** | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This adversary proceeding is before the Court on the Agreed Stipulation of Material Facts (the "Stipulation")(A.P. Doc. 55) submitted by Regions Banks (the "Plaintiff") and Penick Produce Co., Inc. ("Penick Produce" or "Defendant"). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the United States District Court for the Northern District of Mississippi's Order of Reference Dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(B)(K), and (O). The Court must decide whether, and to what extent, Plaintiff may enforce its lien on crops grown in 2009 by Russell Moore (the "Debtor"), and subsequently sold to Defendant.

This case was submitted to the Court on the Stipulation and briefs prepared by Plaintiff and Defendant, and at the parties' request, the Court agreed to rule on Regions' claim against

1

Penick Produce based on the parties' briefs without the necessity of presenting evidence at trial. A status conference was held on March 5, 2013, at which time the parties consented to this Court entering final judgment on the case. (A.P. Doc. 58). At the hearing, parties were informed that if they chose to proceed in this manner, the Court would limit its fact finding to the Stipulation. An order memorializing these rules, stipulations, and agreements was entered on March 14, 2013. (A.P. Doc. 62). The order also confirmed the agreement between parties that the only remaining issue in this matter is whether the payments made by Defendant to the Debtor, regarding the 2009 sweet potato crop, should have instead been tendered to the Plaintiff.[1] The Court has considered the pleadings, the evidence, the briefs and the law, and finds and concludes as follows.

## I.    **FINDINGS OF FACT**

The following facts are undisputed and stipulated by the parties. [2]

1.        In each year from 2006 to 2009, Regions generated and filed a UCC-1F Farm Product Filing Financing Statement ("UCC-1F") with the Mississippi Secretary of State's central filing system naming Russell and Wanda Moore as debtors, securing related loans made by Regions to said Debtors.

2.        A copy of Regions' UCC-1F filings are attached collectively as Exhibit "1" [to the Stipulation.]

3.        Each of Regions' UCC-1F forms for the crop years 2007-2009 were identical, listing sweet potatoes as the farm product, naming a specific crop year, and including the

---

[1] At a status hearing held on May 15, 2013 in the main bankruptcy case, counsel for the debtors/defendants Russell and Wanda Moore confirmed that the Moores and Perfect Pack (defined below) intentionally did not file a brief and instead were relying on the argument of Defendant.

[2] The Stipulation is reproduced herein in its entirety and verbatim, except where indicated by brackets [ ].

county codes for Chickasaw County and Calhoun County, Mississippi. Additionally, each UCC-1F under the heading "Description of Real Estate" contained the phrase "See attached Exhibit 'A'." Each Exhibit A contained identical information for each of the crop years 2007-2009.

4.      Each Exhibit A contained the name and mailing address of the debtors and the following description of Regions' security interest:

> All crops, and Farm Products whether any of the foregoing is owned now or acquired later; whether any of the foregoing in now existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever form received, including but not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Service Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangible or programs); all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).

5.      Additionally, each Exhibit A listed sweet potatoes as the crop; specified a particular crop year; listed the county codes for Chickasaw and Calhoun Counties; and included under the heading "Description of Real Estate" a detailed description for each parcel of land including the number of acres in each parcel, the name of the owner of each parcel, the farm number of each parcel, and the Section, Township, and Range for each parcel.

6.      Regions did not include on its UCC-1F forms the name or county code for Webster County or any other county except Chickasaw and Calhoun.

7.      Likewise, Regions also did not include on its Exhibit A any parcel of land in Webster County or any other county except Chickasaw and Calhoun.

8.　　　　Regions' Exhibit A described six parcels of land. Those parcels included one 32-acre parcel of land in Calhoun County and five parcels of land in Chickasaw County totaling 790 acres.

9.　　　　The best evidence in this case with regard to the actual acreage of sweet potatoes planted by Russell Moore in 2009 comes from records maintained by the United States Department of Agriculture Farm Service Agency.

10.　　　　For the 2009 crop year, Russell Moore reported to the Farm Service Agency that he planted sweet potatoes on 711.79 total acres of land, comprised of parcels located in Chickasaw, Calhoun, and Webster Counties.

11.　　　　Of the total 2009 sweet potato acreage, Moore reported that 505.49 acres was located in Chickasaw and Calhoun Counties. This portion of the reported acreage matches with the Section/Township/Range descriptions of the six parcels of land described on Regions' Exhibit A attachments to its UCC-1F forms.

12.　　　　Moore reported that the remaining 206.3 acres of sweet potatoes he planted in 2009 were located in Webster County.

13.　　　　Penick Produce is in the business of buying and selling processed grade sweet potatoes for incorporation into retail products such as baby food. Penick Produce buys potatoes from a number of farming operations located primarily in and around the Vardaman, Mississippi area.

14.　　　　Under the Food Security Act, 7 U.S.C. § 1631(e)(2):

A buyer of farm products take subject to a security interest created by the seller if—
(2) in the case of a farm product produced in a State that has established a central filing system—
(A) the buyer has failed to register with the Secretary of State of such State prior to the purchase of farm products;

4

and

(B) the secured party has filed an effective financing statement or notice that covers the farm products being sold;

With regard to (A) above, it is stipulated that Penick Produce was not registered as a buyer with the Mississippi Secretary of State prior to the purchases at issue in this case.

15.    Records show that Penick Produce purchased 18,894 bushels of 2009 crop year sweet potatoes from Russell Moore for which it paid $77,029.50, an average of about $4.07 per bushel.

16.    Penick Produce did not search the Mississippi Secretary of State's centralized filing system for liens against Moore's crop before it made these purchases and it did not make Regions a co-payee on the checks used to pay for the potatoes.

17.    According to Debtor Russell Moore, his farming operation harvested about 90 bushels of sweet potatoes for each acre planted in 2009.

18.    Based on this estimated per acre yield, the best evidence in this case shows that of the 18,894 bushels purchased by Penick Produce, approximately 4,050 bushels were purchased directly from 45 acres of land located in Chickasaw and Calhoun Counties and listed on Regions' Exhibit A for each of the crop years from 2007-2009. These 4,050 bushels were not processed by Perfect Pack Sweet Potato Packing Company, LLC ("Perfect Pack").

19.    Also based on this estimated per acre yield, the best evidence in this case shows that of the 18,894 bushels purchased by Penick Produce, another approximately 4,050 bushels were grown on 45 acres of land located in Webster County and not listed on Regions' UCC-1F or its Exhibit A for any crop year. These 4,050 bushels were also not

processed by Perfect Pack and were transported directly from Webster County to Penick Produce in Calhoun.

20.      The remaining 10,794 bushels purchased by Penick Produce were "washout" sweet potatoes grown by Russell Moore which had been processed by Perfect Pack at its processing facility in Chickasaw County.

21.      Russell Moore does not recall and there are no documents to show where the 10,794 bushels of "washout" sweet potatoes were grown.

22.      Moore's wholly owned washing and packing operation, known as Perfect Pack […], also a defendant in this case, is located in Chickasaw County.  Perfect Pack is part of Moore's farming operation and Moore purchases, washes and sells sweet potatoes from other farmers as part of his business.

23.      The facility where Perfect Pack processed the "washout" potatoes purchased by Penick Produce is located behind Russell Moore's personal residence at 203 County Road 39 in Houston, Chickasaw County, Mississippi.  The land upon which Perfect Pack's processing facility is situated is described in the land records of Chickasaw County as located at Section 30, Township 13, Range 2.

24.      Penick Produce took possession of all "washout" sweet potatoes it purchased from the Debtors either at Perfect Pack's processing facility in Chickasaw County or at Penick Produce's facility in Calhoun County.

25.      Penick Produce's facility is located in Vardaman, Calhoun County, Mississippi on land described in the land records of Calhoun County as located at Section 12, Township 14, Range 1 East.

26.       Regions' Complaint seeks compensation for sweet potatoes purchased by Penick
Produce grown by Moore during the 2009, 2010, and 2011 crop years.

27.       However, Regions concedes that it has no enforceable interest in the 2011 crop.

28.       Regions also concedes that it has no remaining interest in the 2010 crop due to a
repayment made by the debtor, Russell Moore, in the amount of $410,347.00.

29.       Therefore, Regions concedes that its claim against Penick Produce in this
adversary proceeding is limited to whether and to what extent Regions is entitled to be
reimbursed for the sweet potatoes from the 2009 crop year purchased from Russell
Moore by Penick Produce.


## II. CONCLUSIONS OF LAW

### A. Standard

An agreed statement of facts submitted to the Court is defined as "[a] narrative statement
of facts that is stipulated to be correct by the parties and is submitted to a tribunal for a ruling."
STATEMENT OF FACTS, Black's Law Dictionary (9th ed. 2009). In the matter before the
Court, the parties have submitted a single Agreed Stipulation of Material Facts, as well as their
respective briefs and replies. It is from the Stipulation alone that the Court has made factual
findings, as requested and agreed to by the parties. Plaintiff claims a security interest in the 2009
sweet potato crop grown by the Debtor and sold to the Defendant. It is Plaintiff's burden to
prove its secured claim by preponderance of the evidence. *In re Fidelity Holding Company, Ltd.*,
837 F.2d 696, 698 (5th Cir. 1988). Defendant does not contend that it was a bona fide purchaser
– an assertion for which it would carry the burden at trial – but simply that Plaintiff did not have
a properly perfected interest in the potatoes purchased by Defendant, or at least not one which

7

has been, or can be, proven. *See Memphis Hardwood Flooring Co. v. Daniel*, 771 So.2d 924, 933 (Miss. 2000)(a claim of being a bona fide purchaser constitutes an affirmative defense for which the party making the claim bears the burden of proof by competent evidence).

### B. Webster County

In 2009, Defendant purchased from Debtor a total of 18,894 bushels of sweet potatoes grown on the Debtor's various parcels of land located between Webster, Chickasaw and Calhoun Counties. (A.P Doc. 55, Pg. 4). According to the Stipulation, the Debtor reported that of the total 711.79 acres of land dedicated to sweet potato crops, 206.3 of those acres were located in Webster County, Mississippi. (A.P Doc. 55, Pg. 3). Also according to the Stipulation, based on an estimated crop production of 90 bushels per acre, the best evidence shows that of the 18,894 bushels purchased, approximately 4,050 of those bushels were grown on 45 acres of land located in Webster County. (A.P. Doc. 55, Pg. 4). Regions did not include on its UCC-1F forms the name or county code for Webster County or any other county except Chickasaw and Calhoun. (A.P. Doc. 55, Pg. 2). Likewise, Regions also did not include on its Exhibit "A" any specific parcel of land in Webster County or any other county except Chickasaw and Calhoun. *Id.* These 4,050 bushels grown in Webster County were never processed by Perfect Pack, and were transported directly from Webster County to the Defendant in Calhoun County. Accordingly, Plaintiff failed to perfect its lien and has no enforceable lien on the potatoes grown in Webster County. The evidence directly contradicts any claim Plaintiff may have to the 4,050 Webster County bushels because these potatoes came directly from land that Plaintiff failed to list on the UCC-1F. (A.P. Doc. 55, Pg. 2).

### C. Chickasaw and Calhoun Counties

8

Of the total 2009 sweet potato acreage, Debtor reported that 505.490 acres were located in Chickasaw and Calhoun Counties. (A.P. Doc. 55, Pg. 3). Based on the estimated crop production, the best evidence in this case shows that of the 18,894 bushels purchased by Defendant, approximately 4,050 bushels[3] were purchased directly from 45 acres of land located in Chickasaw and Calhoun Counties. *Id.* These 45 acres of land located in Chickasaw and Calhoun Counties were listed on Plaintiff's Exhibit A for each of the crop years from 2007-2009. Plaintiff's Exhibit A, containing the description of Plaintiff's security interest in Debtor's crops, described six parcels of land. Those parcels included one 32-acre parcel in Calhoun County, and five parcels in Chickasaw County. Defendant concedes that Plaintiff may be able to enforce its lien in the 4,050 bushels purchased directly from parcels of land listed on the UCC-1F. (A.P. Doc. 64, Pg. 7). Under the Food Security Act, 7 U.S.C. § 1631(e)(2):

> "A buyer of farm products takes subject to a security interest created by the seller if—
> (2) in the case of a farm product produced in a State that has established a central filing system—
>> (A) the buyer has failed to register with the Secretary of State or such State prior to the purchase of farm products; and
>> (B) the secured party has filed an effective financing statement or notice the covers the farm products being sold...

It has been stipulated between the parties that Defendant was not registered as a buyer with the Mississippi Secretary of State prior to the purchases at issue in this case. (A.P. Doc. 55, Pg. 4). Regardless, the Court finds and concludes that the 2009 UCC-1F was effective to perfect Plaintiff's interest in the 4,050 bushels purchased directly from Chickasaw and Calhoun specifically listed acreage. Accordingly, Defendant is liable to Plaintiff for these potatoes. At the stipulated value of $4.07 per bushel (A.P. Doc. 55, Pg. 4), judgment is due to be entered in favor of Plaintiff in the amount of $16,483.50 for these potatoes.

---

[3] Whether by coincidence or agreement, the parties stipulated that 4,050 bushels were purchased directly from Webster County and 4,050 bushels were purchased directly from Chickasaw/Calhoun Counties.

### D. The "Washout" Sweet Potatoes

Aside from the aforementioned 4,050 bushels purchased from Webster County, and the 4,050 bushels purchased from Chickasaw and Calhoun Counties, there remain 10,794 bushels purchased by Defendant without a definite, known origin.  The remaining 10,794 bushels were "washout" sweet potatoes grown by the Debtor and processed by Perfect Pack at its processing facility in Chickasaw County.  (A.P. Doc. 55, Pg. 5).  According to the Stipulation, the Debtor does not recall – and there are no records to show – where the 10,794 bushels of washout sweet potatoes were grown.  Thus, the initial question is whether there is sufficient proof that the washout potatoes were grown on land specifically encumbered by Plaintiff's lien.  If Plaintiff cannot prove that the washout potatoes were grown on acreage covered by the UCC-1F, the secondary question is whether Plaintiff's lien attached to Debtor's sweet potatoes that were brought into Chickasaw County to be processed by Perfect Pack, but outside the specific parcels of land described in the UCC-1F.

### 1.  No Initial Perfection

As the parties have stipulated, the washout potatoes were grown by the Debtor, but on which parcel or which parcels, in which county, is unknown.  (A.P. Doc. 55, Pg. 5).  Without any conclusive evidence, and without any recollection by the Debtor, the Court concludes that Plaintiff has not proven that the potatoes were grown on acreage described in the UCC-1F.  All 10,794 bushels of washout potatoes could have come from Webster County, or all could have come from Calhoun and/or Chickasaw Counties.  Further, it is just as likely that some came from each county.  However, without any records, documentation, or recollection on the part of the Debtor, there is no way to know conclusively.

If the washout potatoes in question had come from the specifically listed parcels in either Chickasaw and/or Calhoun Counties, Plaintiff would have a lien on the crops. The lien would have attached when crops were grown on any of the parcels of the Debtor's land listed in the financing statement. The lien would have followed the potatoes despite the subsequent transfer to the Perfect Pack facility, and ultimate sale to Defendant. Conversely, if the potatoes were grown in Webster County, no lien would have attached and the subsequent transportation of the potatoes would not have cured this defect (as described further below).

The parties stipulated that no records indicate where the potatoes where grown, and Mr. Moore has no recollection. Some or all of the washout potatoes could have been grown in Webster County – where the Plaintiff has no lien – or some or all of the potatoes could have been grown in Chickasaw and Calhoun Counties, where Plaintiff holds a lien on several parcels of land. While it might be easy and perhaps even fair to simply prorate among the three counties using the total acreage farmed and bushels produced from that year, this would not be the correct result. To do so would be analogous or tantamount to an impermissible quotient verdict. *See McDonald v. Pless*, 238 U.S. 264 (1915); *Freight Terminals, Inc. v. Ryder System, Inc.*, 461 F.2d 1046 (5th Cir. 1972); *Complete Auto Transit, Inc. v. Wane Broyles Eng'g Corp.*, 351 F.2d 478, 480 (5th Cir. 1965)("Quotient verdicts are universally condemned..."). The Plaintiff has the burden of proving that it held a security interest in the washout potatoes, and the parties agree that there is no conclusive evidence on this issue. As such, Plaintiff cannot carry its burden of proof on the issue of whether Plaintiff's lien attached to the potatoes when growing or harvested.

### 2. Transport into Chickasaw County

Plaintiff further contends that even if it did not possess a lien on the washout potatoes when they were grown, it acquired a lien when the sweet potatoes were transported to Perfect

Pack for processing in Chickasaw County and/or when the potatoes were delivered to the Defendant in Calhoun County. Specifically, Plaintiff maintains that it holds a lien on all sweet potatoes Defendant took possession of in Chickasaw or Calhoun County pursuant to the UCC-1F. (A.P. Doc. 63, Pg. 11). Perfect Pack's facility is located in Chickasaw County, but is not located on any parcel or plot of land listed in any of the Plaintiff's financing statements. According to the Plaintiff, all of its UCC-1F financing statements unequivocally state that Plaintiff has a lien on all sweet potatoes *existing* in Calhoun and Chickasaw Counties. "All crops and farm products, whether any of the foregoing is owned now or acquired later; whether any of the foregoing is now existing or hereinafter raised or grown..." (A.P. Doc. 55, ¶¶ 3 and 4). This language, taken from the aforementioned Exhibit "A", was the provided description of Plaintiff's security interest that was attached to each UCC-1F filing. Plaintiff maintains that by virtue of this language, specifically "*all* crops and farm products" and "owned now *or acquired later*", the financing statements "clearly exhibit Regions claim to ALL sweet potatoes and farm products Debtors grew, were to grow, or acquired in both Chickasaw and Calhoun Counties." (A.P. Doc. 63; Pg. 12). Plaintiff stretches this argument to say that their UCC filings represent "two distinct liens" – one on the "growing crops" which were specifically identified by acreage, and then a second lien on *all* "farm products" which would include all sweet potatoes owned or acquired by the Debtor wherever located. (A.P. Doc. 66; Pg. 3). Continuing, Plaintiff asserts that as there is no question the Debtor grew all of the potatoes - washout or otherwise – it is irrelevant to the ultimate determination of enforceability of Plaintiff's lien where the potatoes were grown. Once the potatoes were taken to the Perfect Pack facility in Chickasaw County (where it is agreed that all washout potatoes in question were processed), or once they were received by Defendant, whose facility is located in Calhoun County, Plaintiff's lien attached. (A.P. Doc. 63; Pg. 13).

12

Plaintiff contends that because the potatoes – or "farm products" – were processed in Chickasaw County and transported to Calhoun County, it has met its burden of proving its lien. Defendant contends that the interpretive requirements set forth by the applicable Food Security Act ("FSA") Regulations and Mississippi's Administrative Rules mandate a different result. (A.P. Doc. 65; Pg. 12). Plaintiff contends that it has met these requirements by following the Food Security Act qualifications for an "effective financing statement". (A.P. Doc. 63; Pgs. 7-8). The requirements include:

i.   the name and address of the secured party;
ii.  the name and address of the person indebted to the secured party;
iii. the social security number of the debtor or, in the case of a debtor doing business other than as an individual, the Internal Revenue Service taxpayer identification number of such debtor;
iv.  a description of the farm products subject to the security interest, including the amount of such products where applicable; and a reasonable description of the property including the county or parish in which the property is located.

7 U.S.C. § 1631(c)(4). Similarly, Mississippi's regulations require that an effective financing statement include "a description of farm products subject to the security interest to include county where collateral produced and amount of 'such product where applicable.'" Miss. Central Filing Sys. Reg. § 1.00(D). Plaintiff also cites in its brief Mississippi Central Filing System Regulation § 2.01(H), which provide for the inclusion in an effective financing statement of:

further details of the farm product subject to the security interest if needed to distinguish it from other such product owned by the same person but not subject to the particular security interest.

The issue is that Plaintiff has included in its filings descriptions of six *specific* parcels of land that are farmed by the Debtor and to which its various liens attach, rather than just a generic county name or code. Under the standards set forth in the aforementioned Regulation § 2.01(H), logic would dictate that Plaintiff's liens were limited to the parcels specifically listed. When

Plaintiff described those particular plots of land, under the Mississippi Filing Regulations, it gave notice to third-party buyers that its lien was limited to those parcels alone, and that the specificity of the filings was to distinguish the encumbered property from "other such product owned by the same person but not subject to the particular security interest." *Id.*

Further, the regulations provide, at section 5.04, under the heading "AMOUNT AND REASONABLE DESCRIPTION," that:

> (C) Any EFS and master list entry will identify each county in Mississippi where the product is produced. If no further identification of the location of the product is shown, this means that all such product in each such county owned by such person is subject to the security interest.
>
> **(D) The need to supply additional information arises only where some of that product owned by that person is subject to the security interest and some is not.**

Miss. Central Filing Sys. Reg. §5.04(C) and (D)(emphasis added). Plaintiff is a victim of its own detailed work. Had Plaintiff not included anywhere on its filings the descriptions of the six specific parcels of land, it *may* have succeeded with this argument. However, Plaintiff's filings – as read under the applicable regulations – gave notice to third-party buyers that Plaintiff had a lien on potatoes located on the six described parcels of land, but nowhere else in Chickasaw or Calhoun Counties. A plain reading of the relevant rules and regulations mandates a conclusion that the inclusion of specific parcels of land in Plaintiff's filings limited its lien rights to those particular parcels. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 245-46, 109 S. Ct. 1026, 1032-33, 103 L. Ed. 2d 290 (1989); *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 362 (5th Cir. 1995); *In re Universal Seismic Associates, Inc.*, 288 F.3d 205, 207 (5th Cir. 2002). Thus, Plaintiff has no perfected lien in the "washout" potatoes because neither Perfect Pack's facility, nor Defendant's facility, is located on one of the specifically described parcels.

14

FSA's Regulations and Mississippi's Administrative Rules contain a clear regulatory directive which provides that additional descriptions of land where crop is located, beyond just a name of an entire county, should not be included *unless* the lien attaches to *only* the produce grown or located on those particular parcels of land.[4]  (Emphasis added); *See* 9 C.F.R. §§ 205.207(c)-(f) and Mississippi Administrative Rules 604.9.3-604.9.6.

## CONCLUSION

Plaintiff has no lien on the sweet potatoes grown and sold directly from Webster County. Plaintiff did have a lien on the 4,050 bushels of sweet potatoes grown and sold directly from the Chickasaw and Calhoun parcels described in the UCC-1F.  Accordingly, judgment is due to be entered against Defendant in favor of Plaintiff in the amount of $16,483.50.  Plaintiff has not carried its burden to prove that it had a lien on any of the "washout" potatoes.  A separate and final judgment will be entered contemporaneously herewith.

Jason D. Woodard
United States Bankruptcy Judge

---

[4] This proposition also necessarily distinguishes the case cited by Plaintiff, *In re Findley*, 76 B.R. 547 (Bankr. N.D.Miss. 1987). *Findley* held that "security agreements and financing statements are not per se defective" as a result of not containing a description of the property if they are "taken in good faith and in the absence of a clear statutory directive" that the filings should contain such a description. *Id.* at 554-55.  Despite the absence of "clear statutory directive" for U.C.C. financing statements as in *Findley*, the applicable FSA *does* contain a clear statutory directive- additional descriptions of property covered should only be included so as to distinguish it from property owned by the same person, and in the same county, but which is not covered by the lien.